IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-10-1374 |
| THOMAS J. REINAMAN, | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

The Guardian Life Insurance Company of America ("Guardian") sued Thomas J. Reinaman for a declaration that his short-term and long-term disability coverage was null and void. Reinaman counterclaimed against Guardian, and filed a third-party complaint against Calvin F. Shilling, Sr., Park Avenue Securities, LLC ("Park Avenue"), Meta-Tech Consulting, Inc. ("Meta-Tech"), and First Financial Group ("First Financial")[1] alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1000 et seq., and Maryland law. For the following reasons, Meta-Tech's motion to dismiss will be granted, and the motions to dismiss filed by Guardian,

---

[1]  First Financial Group is the trade name used by Eckels Associates, LLC. ECF No. 34 at 1. The case style will be amended to reflect that Eckels Associates, LLC is the third-party defendant's proper name.

Shilling, and First Financial will be granted in part, and denied in part.  Park Avenue's motion for summary judgment and costs and Reinaman's motion to amend will be granted in part, and denied in part.

I.   Background[2]

On May 15, 2006, Guardian issued a group life and health insurance policy ("the Plan") to Meta-Tech, an information technology company in Waldorf, Maryland.  Compl. ¶¶ 1-2.  On September 28, 2007, Meta-Tech hired Reinaman as a principal information engineer.  Third-Party Compl. ¶ 1 & Ex. A.  Reinaman was to receive a $172,328.00 salary and $15,439.92 in benefits, including short-term and long-term disability insurance through the Plan, for which he would pay $82.92 a month.  *Id.,* Ex. A.

When Reinaman was hired, Meta-Tech's director of administration, Catherine Swartz, told him to contact Shilling for the details of his benefits.  *Id.* ¶ 3.  Shilling was an employee of First Financial and a registered representative of Guardian's wholly-owned subsidiary, Park Avenue Securities, LLC. *Id.*  He was also "the insurance agent and broker for . . . Meta-Tech and Meta-Tech's employees."  *Id.* ¶ 28.

---

[2]  For the motions to dismiss, the well-pled allegations in Reinaman's complaints are accepted as true.  *See Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).  For the motion for summary judgment, Reinaman's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

Reinaman supplied Shilling with his name, date of birth, and address, and the names and dates of birth for his dependants.  *Id.* ¶ 4.  He also provided "all [other] information Shilling requested."  *Id.*  Shilling sent Reinaman a letter containing a description of the Plan's long-term disability benefits which stated:

> Long-Term Disability—To secure and safeguard the professionals of Meta-Tech, there is an individual medically underwritten Long-Term Disability program that will provide 60% of salary for total and partial disability to age 65 after a waiting period of 26 weeks.

*Id.* ¶ 5.

Shilling did not tell Reinaman that "he would have to provide additional proof of insurability," and he led Reinaman to believe that he "had obtained all of the promised benefits for him, including the short-term and long-term disability insurance."  *Id.*  He also led Reinaman "to believe . . . that this was a group policy into which he was admitted by virtue of his employment at Meta-Tech," and Shilling never asked Reinaman about his "individual medical history." *Id.* ¶ 6.

On May 30, 2008, Reinaman was in a six-car highway accident.  Compl. ¶ 19.  Although he initially appeared fine, Reinaman suffered brain damage and other injuries "that, over time, left him physically and mentally impaired . . . and unable

to work."  Third-Party Compl. ¶ 8.  Reinaman left work on June 22, 2009, and Guardian paid him short-term disability benefits for 26 weeks.  *Id.* ¶ 9.  Reinaman alleges that when Guardian "realized [he] would likely be disabled for a long period of time," it "returned various premium payments to Meta-Tech . . . to cover up the fact that Reinaman had [long-term disability] insurance."  *Id.* ¶ 33.

On February 2, 2010, Guardian terminated Reinaman's short-term and long-term disability coverage.  *Id.* ¶¶ 9-10; Compl. ¶ 34.  On February 19, 2010, Reinaman requested that Guardian reconsider the termination.  *Id.* ¶ 36.  On April 29, 2010, Guardian issued its final decision, finding that the rescission of Reinaman's coverage had been appropriate.  *Id.* ¶ 38.

On May 28, 2010, Guardian sued Reinaman, alleging that he had not applied for disability insurance until after his accident, and that he omitted "pertinent" and "material" information from his application.  *Id.* ¶¶ 8, 34.  Guardian sought a declaration that "the short-term and long-term disability coverage issued to Thomas Reinaman, through [the Plan]," was "null and void," and requested "other and further relief as the Court deems just and proper."  *Id.* ¶ 38.

On August 6, 2010, Reinaman answered Guardian's complaint, counterclaimed against it, and filed a third-party complaint against Shilling, Meta-Tech, First Financial, and Park Avenue

for violating ERISA and Maryland law.   ECF Nos. 9-11.   On

September 2, 2010, Guardian moved to dismiss Reinaman's

counterclaims.   ECF No. 24.   Shilling moved to dismiss the

third-party complaint on September 17, 2010, and Meta-Tech moved

to dismiss on September 29, 2010.   ECF Nos. 30, 31.   On October

4, 2010, Park Avenue Securities moved for summary judgment and

costs, and First Financial moved to dismiss.   ECF Nos. 33, 34.

On November 23, 2010, Reinaman moved to amend his counterclaim

and third-party complaint.   ECF No. 42.

II.   Analysis

    A.   Standards of Review

      1.   Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses."   *Presley v. City of

Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader

is entitled to relief."   *Midgal v. Rowe Price-Fleming Int'l

Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).   Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff

must allege facts that support each element of the claim

advanced.  *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557).  The complaint must not only allege but also "show" that the plaintiff is entitled to relief.  *Id.* at 1950.  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* (internal quotation marks omitted).

2.  Motion for Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby,*

6

*Inc.*, 477 U.S. 242, 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B.   Motions to Dismiss

1.   First Financial's Objection to Joinder

First Financial argues that its motion to dismiss should be granted because it is not a necessary party to the litigation under Fed. R. Civ. P. 19 (a) and "should never have been joined in this action."   ECF No. 34 at 7-8.   Fed. R. Civ. P. 19 (a) provides for "persons required to be joined if feasible."   Rule 19 (a) does not limit whom the defendant may join by a third-party complaint.   That is governed by Rule 14(a), which provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to

it for all or part of" an asserted claim.   Fed. R. Civ. P. 14

(a) (1).[3]

Rule 14 (a) requires that the third party's liability be

"secondary or derivative to the defendant's liability to the

original plaintiff."   *Laughlin v. Dell Fin. Servs., LP,* 465 F.

Supp. 2d 563, 566 (D.S.C. 2006).   The third-party defendant "may

not be impleaded merely because he may be liable to the

plaintiff" and it is not enough "that the third-party claim is a

related claim."   *E.I. DuPont de Nemours & Co. v. Kolon Indus.,*

*Inc.,* 688 F. Supp. 2d 443, 462 (E.D. Va. 2009).

The basis of Guardian's complaint against Reinaman is that

he did not apply for long-term disability coverage until after

his accident, and he withheld material medical information in

his application.   As discussed below, the basis for Reinaman's

third-party complaint against First Financial is that Shilling—

as First Financial's agent and employee—caused Reinaman's

alleged failure to obtain coverage before the accident. If

Reinaman is found liable to Guardian because his coverage was

not properly obtained, he will have a claim that Shilling and

---

[3]   "[T]he core purpose of Rule 14" is to "avoid[] unnecessary
duplication and circuity of action," and, "as long as a third-
party action[] falls within the general contours limned by Rule
14 (a), does not contravene customary jurisdictional and venue
requirements, and will not work unfair prejudice, a district
court should not preclude its prosecution."   *Forest City Cmty.*
*Dev. Inc. v. Agere Sys. Inc.,* 2010 WL 2245499, at * 7 (E.D. Va.
June 1, 2010)(*quoting Lehman v. Revolution Portfolio, LLC,* 166
F.3d 389, 394-95 (1st Cir. 1999)).

First Financial are liable to him.[4]  Joinder was appropriate, and First Financial's motion to dismiss will not be granted on this basis.

    2.   State Law Claims

Reinaman states claims for breach of contract, negligence, fraud, promissory estoppel, negligent inducement, declaratory judgment, and quantum meruit under Maryland law.  Guardian and the third-party defendants argue that these claims should be dismissed because they are preempted by ERISA.  ECF No. 24 at 8-17; ECF No. 30 at 4-6; ECF No. 34 at 5-6.  Reinaman contends that dismissal is inappropriate because the claims are pled "in the alternative" to his ERISA claims.  ECF No. 41 at 8.

    a.   Complete Preemption

"State law causes of action may either be 'completely preempted' or 'conflict preempted' by ERISA." *Smith v. Logan,* 363 F. Supp. 2d 804, 808 (E.D. Va. 2004).  Under ERISA § 502(a), "a participant or beneficiary" may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132 (a)(1).  A state law cause of action within the scope of § 502

---

[4]  *See Nova Prods., Inc. v. Kisma Video, Inc.,* 220 F.R.D. 238, 240-41 (S.D.N.Y. 2004)(video store sued for copyright infringement could implead distributor as third-party defendant because if store was liable to plaintiff for infringement it would have a breach of contract claim against the distributor).

(a) is completely preempted.  *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 124 S. Ct. 2488 (2004).

There are "three essential requirements for complete preemption: (1) the plaintiff must have standing under § 502 (a) to pursue [his] claim; (2) [his] claim must 'fall within the scope of an ERISA provision that [he] can enforce via § 502 (a); and (3) the claim must not be capable of resolution 'without an interpretation of the contract governed by federal law,' i.e., an ERISA-governed employee benefit plan." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 372 (4th Cir. 2003)(*citing Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir. 1996)).

Plan participants and beneficiaries have standing to sue under § 502 (a).  *See* 29 U.S.C. § 1132(a).  A "participant" is "any employee or former employee of an employer  . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).  An employee may "become eligible to receive a benefit" if he has a "colorable claim" that he "will prevail in a suit for benefits" or "fulfill eligibility requirements in the future." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117 (1989).  A claim is colorable when "it is arguable and nonfrivolous, whether or not it would succeed on

10

the merits." *Davis v. Featherstone,* 97 F.3d 734, 737-38 (4th Cir. 1996).

Reinaman argues that his state claims are not preempted because those claims are brought on the theory that he lacks standing under § 502 (a) because he "was not a 'participant' at the time of his automobile accident" as he "had not submitted an application for coverage." ECF No. 54 at 3.  Under Fed. R. Civ. P. 8 (d)(3), Reinaman is entitled to "state as many separate claims . . . as [he] has, regardless of the consistency."  Thus, his state law claims need not be dismissed only because he has also stated claims for ERISA violations on the conflicting theory that he was covered under the Plan at the time of his accident.  *See England v. Marriott Int'l, Inc.,* --- F. Supp. 2d ---, 2011 WL 570128, at *20 (D. Md. Feb. 14, 2011).

Assuming the truth of Reinaman's allegations that he—at Shilling's direction—never provided proof of insurability as required to obtain disability coverage, he would not have a colorable claim to benefits.  Accordingly, he would not have standing to sue under § 502 (a).  *See Sonoco Prods.,* 338 F.3d at 372.  At this stage of the litigation, ERISA cannot be said to completely preempt Reinaman's state claims.

b.   Conflict Preemption

Even when a plaintiff does not have standing to sue under § 502 (a), his state law claims may be conflict preempted by ERISA

11

§ 514, which provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to an employee benefit plan."  29 U.S.C. § 1144 (a). "In other words, even [if Reinaman] is not subject to 'complete preemption' under § 502 (a), [the] Defendants may still assert the defense of 'conflict preemption." *Moeller v. Qualex, Inc.,* 458 F. Supp. 2d 1069, 1073 (C.D. Cal. 2006); *Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 756-57 (5th Cir. 1990).

A law "relates to" an employee benefit plan if, "in the normal sense of the phrase," it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97 (1983).  A law has a "reference to" ERISA plans if it "acts immediately and exclusively upon ERISA plans," or if "the existence of ERISA plans is essential to the law's operation." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 325 (1997).  Under this "reference to" language, ERISA has been found to preempt state laws that "impos[ed] requirements by reference to [ERISA] covered programs" and that "specifically exempted ERISA plans from an otherwise generally applicable garnishment provision." *Id.* (alterations in original)(internal quotation marks and citation omitted).

"[T]he Supreme Court has not provided a succinct definition of, or analytical framework for, evaluating the phrase

12

'connection with.'"  *Paulsen v. CNF, Inc.,* 559 F.3d 1061, 1082
(9th Cir. 2009).  To determine ERISA's preemptive scope under
the "connection with" language, courts look "to the nature of
the effect of the state law on ERISA plans," *Dillingham,* 519
U.S. at 325 (internal quotation marks and citation omitted), and
to "the objectives of the ERISA statute as a guide to the scope
of the state law that Congress understood would survive," *Great-*
*West Life & Annuity Ins. Co. v. Info. Sys. & Network Corp.,* 523
F.3d 266, 270 (4th Cir. 2008).

As the Supreme Court has explained, "[i]n enacting ERISA's
preemption provision, Congress intended to ensure that plans and
plan sponsors would be subject to a uniform body of benefits
law."  *N.Y. State Conference of Blue Cross & Blue Shield Plans*
*v. Traveler Ins. Co.,* 514 U.S. 645, 656 (1995).  Congress's goal
"was to minimize the administrative and financial burdens of
complying with conflicting directives among States or between
States and the Federal Government" and to prevent "the potential
for conflict in substantive law . . . requiring the tailoring of
plans and employer conduct to the peculiarities of the law of
each jurisdiction."  *Id.* at 656-57 (alterations in original).

Considering these objectives, the Supreme Court has
identified three categories of state law which ERISA preempts:
"(1) laws that 'mandate[] employee benefit structures or their
administration'; (2) laws that bind employers or plan

administrators to particular choices or preclude uniform administrative practice; and (3) 'laws providing alternate enforcement mechanisms' for employees to obtain ERISA plan benefits." *Wilmington Shipping Co. v. New England Life Ins. Co.,* 496 F.3d 326, 342 (4th Cir. 2007) (*quoting Travelers,* 514 U.S. at 658)(alteration in original).  "A key feature of these categories of laws is that they implicate the relations among the traditional ERISA plan entities." *Id.* (internal quotation marks and citation omitted).

### i.  Negligence Claim

Count III of the counterclaim and third-party complaints states a claim for negligence, based on a "duty [that] arose out of Shilling's role as an insurance agent and broker" for "Meta-Tech and [its] employees."  Third-Party Compl. ¶ 28.  Shilling breached that duty when he "fail[ed] to submit the necessary paperwork to Guardian" which "resulted in Guardian denying coverage for Reinaman" and prevented Reinaman from "obtain[ing] substitute coverage." *Id.*

"Common law professional malpractice, along with other forms of tort liability, has historically been a state concern," *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1471 (4th Cir. 1996), and the Fourth Circuit has held that Congress did not intend to preempt "traditional state-based laws of general applicability" that do not "implicate 'the relations among the

14

traditional [ERISA] plan entities,'"  *Custer v. Sweeny,* 89 F.3d 1156, 1167 (4th Cir. 1996) (alterations in original)(*quoting Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir. 1989)).[5]  Accordingly, certain professional malpractice claims have been found to survive ERISA preemption challenges when the professional is not acting in an ERISA-fiduciary capacity and allowing the state claim to proceed would "not [otherwise] affect the relations among the principal ERISA entities."[6]

Under Maryland law, "[i]t is well established that an insurance agent or broker may be liable in a negligence action to an insured for the broker's or agent's failure to exercise reasonable diligence and care."  *Parlette v. Parlette,* 88 Md. App. 628, 596 A.2d 665, 670 (Md. Ct. Spec. App. 1991)(internal quotation marks omitted).  Thus, Reinaman's claim is based on a "state law . . . [that] imposes a duty of care on . . . professionals" independent of ERISA, *Selman,* 98 F.3d at 1471, and the claim does not "fall within any of the categories of law

---

[5]  *See also Dillingham,* 519 U.S. at 325 (when "federal law is said to bar state action in fields of traditional state regulation, [courts] work[] on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress").

[6]  *See Selman,* 98 F.3d at 1471 (state claim for malpractice against insurance professional did not "relate to" an ERISA plan and was not preempted); *Custer,* 89 F.3d at 1167(malpractice claim against plan's attorney was not preempted).

that [are] generally held to be preempted by ERISA," *Custer,* 89
F.3d at 1167.

Reinaman's negligence claim does not allege that Shilling
was acting as an ERISA fiduciary but as an independent insurance
professional.  Thus, the application of Maryland's common law of
negligence law would not "define fiduciary duties or address
faulty plan administration." *Selman,* 98 F.3d at 1471.  The
claim also would not "regulate the terms of a plan" or "affect
calculation of benefits." *Id.*  And, the negligence claim is
not an alternate enforcement mechanism for obtaining ERISA plan
benefits because Reinaman seeks damages proximately caused by
Shilling's negligent failure to enroll him in an ERISA plan, not
recovery of benefits from the Plan itself.  Some interpretation
of the Plan's terms may be required to assess damages, but that
does not mandate preemption.[7]  Reinaman's negligence claim
against Shilling cannot be said to "relate to" an ERISA plan
within the meaning of § 514.[8]  The negligence claim against
Shilling will not be dismissed.[9]

---

[7]  *See Selman,* 98 F.3d at 1472 (although resolution of the
malpractice claim would require interpretation of certain plan
provisions, that factor did not "carr[y] much weight" because
"the court's inquiry [would] be centered on whether the
defendants' conduct comported with the relevant professional
standard of care," instead of the plan's terms).

[8]  *See Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.
1990) ("we conclude that a claim that an insurance agent
fraudulently induced an insured to surrender coverage under an

16

ii.   Other State Claims

Reinaman also states claims for breach of contract, fraud, promissory estoppel, negligent inducement, declaratory judgment, and quantum meruit under Maryland law.  These claims are all premised on the same theory—that, although Meta-Tech "promised to obtain and pay for short term and long term disability (LTD) insurance," Reinaman has not received the benefits.  Third-Party Compl. ¶ 3.  These claims seek recovery of the benefits Reinaman believes are owed to him under the Plan.  Allowing these claims to proceed would provide an alternate enforcement mechanism for obtaining ERISA benefits and regulate the relationship between

---

existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly.  A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.").

[9]  Reinaman's counterclaim and third-party complaint may be construed as stating the negligence claim against Guardian or Meta-Tech on the basis that they were Shilling's principals.  To the extent Reinaman states these claims, and alleges that Shilling acted not as an independent insurance broker, but as the agent of Reinaman's employer or the plan itself, the claims implicate the relationship between traditional ERISA entities and are preempted.  *See Custer,* 89 F.3d at 1167.  Because First Financial is not a plan sponsor, administrator, or fiduciary, the negligence claim against First Financial as Shilling's principal does not present a preemption issue.  Accordingly, Guardian and Meta-Tech's motions to dismiss will be granted as to the negligence claim, and First Financial's motion will be denied.

ERISA's traditional entities.  These claims "relate to" an ERISA plan.[10]

Reinaman argues that § 514 should not apply to these claims because "at the time [they] arose, there was no plan in effect" and "[f]or ERISA preemption to apply there must first be an employee benefit plan in place."  ECF No. 41 at 11-12.  Although Reinaman may not have been covered by the Plan at the time of his accident, it is clear that an ERISA plan was in place; it is the plan through which Reinaman alleges he received short-term disability benefits, and the plan from which he sought long-term benefits.  *See Moeller,* 458 F. Supp. 2d at 1074 (even if employee was not covered by the plan, employer "clearly ha[d] an ERISA-covered plan in place" and § 514 applied). Reinaman's claims for breach of contract, fraud, promissory estoppel, negligence inducement, declaratory judgment, and quantum meruit are preempted and will be dismissed.[11]

---

[10]  *See, e.g., Kress v. Food Emp'rs Labor Relations Ass'n,* 217 F. Supp. 2d 682, 686 (D. Md. 2002)(ERSIA preempted breach of contract claim despite employee's allegation that employer promised him disability benefits outside its ERISA-covered plan because his claim was "for the same type of benefits that the [employer's] ERISA-governed plan offered" and a "state law claim that seeks to recover benefits of a sort which are already provided by an ERISA plan, even though it seeks to recover them not from the plan itself, but from an employer directly" is preempted by § 514 (a)).

[11]  *See Gresham v. Lumbermen's Mut. Cas. Co.,* 404 F.3d 253, 258 (4th Cir. 2005)("Generally, when a state law claim may fairly be

3.    ERISA Claims

Count II of Reinaman's complaints allege causes of action
for recovery of ERISA benefits under § 502 (a)(1)(B) and breach
of fiduciary duty under § 502 (a)(3).  Shilling, First
Financial, and Guardian have moved to dismiss Count II.

a.    Shilling's Motion to Dismiss

Shilling argues that Count II must be dismissed against him
because Reinaman has not alleged that he had "discretionary
authority or control . . . with respect to Reinaman's long term
disability plan;" thus, Shilling is not liable as an ERISA
fiduciary.  ECF No. 30 at 7.  Reinaman argues that he has
sufficiently alleged Shilling's fiduciary status.  ECF No. 41 at
23.

"To state a claim for breach of fiduciary duty under ERISA,
the plaintiff must allege: (1) that the defendant was a
fiduciary, (2) who was acting within his fiduciary capacity, and
(3) breached his duty."  *Cuthie v. Fleet Reserve Ass'n,* 743 F.
Supp. 2d 486, 494 (D. Md. 2010).  A person is only an ERISA
fiduciary if identified as such in the plan documents, 29 U.S.C.
§ 1102 (a)(2), or "to the extent" that "he exercises any
discretionary authority or discretionary control" over the plan,
or "has any discretionary authority or discretionary

---

viewed as an alternative means of recovering benefits allegedly
due under ERISA, there will be preemption.").

responsibility in the administration of [the] plan."   29 U.S.C.

§ 1002 (21)(A).   ERISA fiduciaries have a duty "not to misinform

employees through material misrepresentations and incomplete,

inconsistent or contradictory disclosure."   *Griggs v. E.I.*

*DuPont de Nemours & Co.,* 237 F.3d 371, 380 (4th Cir. 2001).

To the extent a person engages in "ministerial" or

"administrative" acts, he is not an ERISA fiduciary.   *Adams v.*

*Brink's Co.,* 261 Fed. Appx. 583, 592 (4th Cir. 2008).

A person who "ha[s] no power to make any decisions as to plan

policy, interpretations, practices or procedures, but who . . .

orient[s] . . . new participants and advis[es] participants of

their rights and options under the plan" acts only in an

administrative capacity.   29 C.F.R. 2509.75-8.[12]

Reinaman has alleged that Shilling (1) held himself out as

a representative of Guardian, and (2) sent Reinaman a

description of the Plan's long-term disability benefits and the

paperwork needed to obtain coverage, but (3) failed to advise

Reinaman of all requirements or obtain his coverage.   Third-

Party Compl.   5-15 & 28.   None of these allegations shows that

---

[12] *See also Schmidt v. Sheet Metal Workers' Nat'l Pension Fund,*
128 F.3d 541, 547-48 (7th Cir. 1997) (plan's benefit analyst who
sent participant incorrect paperwork to obtain life insurance
was not a fiduciary in that function, but plan trustees could be
liable for analyst's misstatement if they "failed to exercise
due care either in hiring or retaining [her], or in training her
to respond to inquiries from plan participants").

Shilling performed discretionary functions.  *See* 29 C.F.R. 2509.75-8.  Shilling's motion to dismiss Count II will be granted.[13]

b.   First Financial's Motion

First Financial argues that the ERISA claim against it must be dismissed because Reinaman has not alleged that it is an ERISA fiduciary.  ECF No. 34 at 3 & 7.  First Financial contends that no specific allegations have been made against it, and Reinaman's allegations are insufficient to show that it is vicariously liable for a fiduciary breach.  *Id.*

Reinaman has only alleged that First Financial employed Shilling.  He has not alleged that First Financial is an ERISA fiduciary.  Although "the doctrine of vicarious liability may serve to impose ERISA liability on a *non-fiduciary* principal by virtue of its *fiduciary* agent," Reinaman has not alleged Shilling's fiduciary status.  *Meyer v. Berkshire Life Ins. Co.,* 250 F. Supp. 2d 544, 563 (D. Md. 2003) (emphasis in original).  Because Reinaman has failed to allege that Shilling may be liable under ERISA for breach of fiduciary duty, he has also

---

[13]   Reinaman seeks to amend his third-party complaint to allege that Shilling and First Financial "are fiduciaries within the meaning of ERISA" and "[a]t all times they owed Reinaman a fiduciary duty."  Amend. Third-Party Compl. ¶ 22.  Such conclusionary allegations do not satisfy Rule 8, and Reinaman will not be granted leave to amend.  *See Iqbal,* 129 S. Ct. at 1949.

failed to allege First Financial's vicarious liability.   First
Financial's motion to dismiss Count II will be granted.

                c.   Guardian's Motion

     Guardian argues that Reinaman's breach of fiduciary duty
claim should be dismissed because Reinaman cannot seek relief
under § 502 (a)(3) when another adequate remedy exists.   ECF No.
24 at 17.   Guardian contends that another adequate remedy exists
under § 502 (a)(1)(B), because Reinaman has also sued for
recovery of benefits.   *Id.*   In support, Guardian relies on
*Korotynska v. Metropolitan Life Insurance Company,* 474 F.3d 101
(4th Cir. 2006).   *Id.*

     The "[i]ndividualized equitable relief [available] under
[ERSIA § 502 (a)(3)] is normally appropriate only for injuries
that do not find adequate redress in ERISA's other provisions."
*Korotynska,* 474 F.3d at 102 (*citing Varity Corp. v. Howe,* 516
U.S. 489, 515 (1996)).   In *Korotynska*, the Fourth Circuit held
that the plaintiff's ERISA claim for breach of fiduciary duty
was properly dismissed when the claim was based on the
defendant's failure to provide her long-term disability benefits
under its "systematically flawed and abusive claims
administration procedure[]."   474 F.3d at 103.   The court held
that § 502 (a)(1)(B) provided the plaintiff adequate relief
because "there was no question" that she was seeking "to obtain

individualized review of an allegedly wrongful denial of benefits," as provided for under § 502 (a)(1)(B).

This case is distinguishable from *Korotynska*. Here, as Reinaman has argued, he alleges alternate theories of recovery. One theory is that Guardian wrongfully denied the benefits he was entitled to under the Plan. The other is that Shilling—as Guardian's representative—misinformed him of the process for obtaining coverage, and as a result he was never covered by Guardian. Under that theory, Reinaman could not proceed under § 502 (a)(1)(B), but could sue under § 502 (a)(3). *See Varity*, 516 U.S. at 515 (1996). His breach of fiduciary duty claim against Guardian will not be dismissed.

C.   Park Avenue's Motion for Summary Judgment and Costs

Park Avenue has moved for summary judgment and costs. ECF No. 33. Park Avenue contends that "there is no material fact in dispute that [it] is not a proper party to this litigation" because it did not supervise Shilling's involvement with Reinaman's coverage. *Id.* at 6-7. In support, Park Avenue has presented an affidavit from Shilling that he is "a registered representative of Park Avenue . . . for purposes of any sale of securities products," and "the disability insurance . . . at issue in [this case] is not a security," so Park Avenue "had no involvement in that transaction." Calvin Shilling Aff. ¶¶ 3-4. Reinaman has not challenged Shilling's affidavit and

states that based on the affidavit, he "is withdrawing his claim against [Park Avenue]." ECF No. 41 at 1. Accordingly, Park Avenue will be granted summary judgment.

Park Avenue seeks an award of "costs and fees incurred . . . in defending the Third-Party Complaint." ECF No. 33 at 7. It states that it has incurred legal fees of $1,117.80 for 5.4 hours of work at an hourly rate of $207. *Id*. 2. Under ERISA, "the court in its discretion" may award "reasonable attorney's fee and costs . . . to either party." 29 U.S.C. § 1132 (g)(1). The party seeking fees has the burden of establishing the reasonableness of its request and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 244 (4th Cir. 2009) (*quoting Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)). As Park Avenue has produced no evidence to demonstrate the reasonableness of its request, costs will be denied.

D.   Reinaman's Motion to Amend

Reinaman has moved to amend his counterclaim and third-party complaints to: (1) assert Count II against Meta-Tech, (2) seek relief under ERISA § 502 (a)(2), and (3) "assert a new claim under ERISA [for] an 'informal plan.'" ECF No. 42 1-2. Guardian and the third-party defendants argue that his motion should be denied because the amendments are futile.

Under Rule 15, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15 (a)(2). Although motions to amend should be "granted liberally," leave may be denied "if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008) (*quoting United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740 (7th Cir. 2007)).

### 1. Addition of Meta-Tech to Count II

In his amended third-party complaint, Reinaman seeks to recover "a judgment against . . . Meta-Tech" for ERISA violations. Amend. Third-Party Compl. ¶ 26. The original third-party complaint included allegations of Meta-Tech's conduct in support of Count II, but failed to expressly name Meta-Tech as liable. As Meta-Tech has not objected to this amendment, Reinaman will be granted leave.

### 2. Relief Under § 502 (a)(2)

Reinaman also seeks to amend Count II to add a claim under ERISA § 502 (a)(2). *Id.* ¶ 23. Section 502 (a)(2) allows parties to seek relief for violations of ERISA § 409. Section 409 imposes fiduciary obligations that "relat[e] to the plan's financial integrity" and "reflect[s] a special congressional concern about plan asset management." *Varity,* 516 U.S. at 511-

25

12.   Individual plan participants may sue under § 502 (a)(2), for breach of § 409 fiduciary duties, but only when they seek recovery on behalf of the plan. *Malkani v. Clark Consulting, Inc.,* 727 F. Supp. 2d 444, 448 (D. Md. 2010). Section 502 (a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assoc., Inc.,* 552 U.S. 248, 256 (2008). Because Reinaman seeks relief for his individual injuries, he will be denied leave to include a § 502 (a)(2) claim in Count II.

3. Informal Plan Claim

Reinaman seeks to add a count for an "informal plan" under ERISA. Amend. Third-Party Compl. ¶¶ 51-56. He alleges that his employment offer letter from Meta-Tech "constitutes an informal [ERISA] plan" of which he is "beneficiary" and "participant" and "Guardian, Shilling, [First Financial] and Meta-Tech are fiduciaries." *Id.* ¶ 52. Reinaman alleges that those parties breached their fiduciary duties and wrongfully denied his benefits under the informal plan. *Id.* ¶ 53.

ERISA requires that "every employee benefit plan . . . be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102 (a)(1), and mandates that benefits be provided only "in accordance with the documents and instruments governing" the plan, 29 U.S.C. § 1104 (a)(1)(D). "Some courts have allowed employees to recover promised benefits that are not

26

contained in a formal written plan document if the benefits are contained in an informal benefit plan." *Elmore v. Cone Mills Corp.,* 23 F.3d 855, 861 (4th Cir. 1994).  Although an informal plan may exist "independent of, and in addition to, a formal plan," *id.,* it cannot exist if "the formal plan contains [an integration clause] which excludes the possibility of an informal plan," *Wheeler v. Westmoreland Retirement Plan,* 182 F.3d 912, 912 (4th Cir. 1999).

An informal ERISA plan exists only when "a reasonable person" is able to "ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Elmore,* 23 F.3d at 861 (*quoting Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir. 1982)).  "ERISA does not mandate intricacy but only the satisfaction of these criteria." *Robbins v. Friedman Agency, Inc.,* --- F. Supp. 2d ---, 2010 WL 5590765, at *5 (E.D. Va. May 11, 2010).

Reinaman has attached a copy of the offer letter to his amended complaint.  Amend. Third-Party Compl., Ex. A.  The letter states that Reinaman's compensation would include short and long-term disability insurance at a monthly cost of $82.92. *Id.*  The letter does not meet the requirements of an informal plan.  Although it arguably provides the intended benefit (short and long-term disability insurance) and source of funding (the deductions from Reinaman's paycheck), the letter does not

27

provide a class of beneficiaries or procedure for receiving benefits.

Reinaman has also attached a copy of the letter from Shilling explaining the disability benefits offered to Meta-Tech employees.  Amend. Third-Party Compl., Ex. B.  The letter states that "the professionals of Meta-Tech" are offered a "Long-Term Disability program . . . provid[ing] 60% of salary for total and partial disability to age 65 after a waiting period of 26 weeks."  *Id.,* Ex. B.

Even if Shilling's letter could be interpreted as providing the missing elements—i.e., a class of beneficiaries ("the professionals of Meta-Tech") and a procedure for obtaining benefits (showing a disability after a 26 week waiting period)— it cannot be used to establish an informal plan.  The letter describes Meta-Tech's formal plan offered through Guardian, and the formal plan contains an integration clause excluding the possibility that an informal plan was created.[14]  Reinaman will

---

[14]   The Plan states that it, along with "any riders," is "the entire contract between the parties."  ECF No. 50, Ex. 1.  It provides that "[n]o agent is authorized to alter or amend [the Plan], to waive any conditions or restrictions herein," and that "[n]o change in [the Plan] shall be valid unless evidenced by an endorsement or rider hereon signed by the President . . . of the Insurance Company."  *Id.*  In his amended complaint, Reinaman does not allege that the Plan was modified by an "endorsement . . . signed by the President."  Thus, the formal plan "excludes the possibility" that an informal plan was created, and the claim would be futile. *Wheeler,* 182 F.3d at 912.

not be granted leave to amend his complaint to include the informal ERISA plan claims.

III.   Conclusion

For the reasons stated above, Meta-Tech's motion to dismiss will be granted, and the other motions to dismiss will be granted in part, and denied in part.   Park Avenue's motion for summary judgment and costs, and Reinaman's motion to amend will also be granted in part, and denied in part.

_____5/25/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge